Chicago Pneumatic Tool Company, Petitioner v. Commissioner.
Chicago Pneumatic Tool Co. v. Commissioner
Docket No. 46694.
United States Tax Court
T.C. Memo 1954-195; 1954 Tax Ct. Memo LEXIS 51; 13 T.C.M. (CCH) 1044; T.C.M. (RIA) 54301; November 18, 1954, Filed *51 Where a prime contract with the United States Government was entered into in 1944 and was, therefore, exempt from the profit-limiting provisions of the Vinson-Trammel Act, held, subcontracts entered into under that prime contract are similarly exempt notwithstanding the fact that they were entered into after December 31, 1945. Aluminum Company of America, 23 T.C. - (Oct. 29, 1945). Richard H. Appert, Esq., 14 Wall Street, New York, N. Y., for the petitioner. Maurice E. Stark, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: Chapter 95 of the Act of March 27, 1934, as amended, 48 Stat. 503, authorized the construction of certain naval vessels and aircraft. Section 3 of chapter 95, 48 Stat. 505, required a provision in every contract entered into pursuant to that authorization (with minor exceptions not here material) wherein the contractor agreed to pay into the Treasury his profits from the contract in excess of specified percentages. The Secretary of the Treasury was authorized, in the absence of voluntary payment, to collect the excess profit by the usual methods employed under the internal revenue laws to collect Federal income taxes. Prime contractors were further required to obtain the agreement of all subcontractors to the profit limitations described above. Section 14 of chapter 35 of the Act of April 3, 1939, 53 Stat. 555, 560, extended to contracts for the construction of aircraft for the Army all the provisions of section 3 of chapter 95 of the Act of March 27, 1934, as amended, supra. Under the sections *53 above mentioned, popularly known as the Vinson-Trammell Act and so referred to hereinafter, respondent determined deficiencies in petitioner's excess profit liability in the amounts of $11,546.14 for 1948 and $53,724.69 for 1949. Petitioner, a New Jersey corporation, filed the prescribed annual reports of profit on Army and/or Air Force contracts for the years 1946 through 1949 and an annual report of profit on Naval contracts for 1949 with the collector of internal revenue for the third district of New York. The facts were submitted in the form of a stipulation which is adopted as our findings of fact and incorporated herein by this reference. The principal question for decision is whether the profit-limiting provisions of the Vinson-Trammell Act are applicable to some 59 subcontracts entered into after December 31, 1945, by petitioner and Consolidated Vultee Aircraft Corporation. Section 401 of the Second Revenue Act of 1940 provided that the profit-limiting provisions of the Vinson-Trammell Act should not apply to contracts or subcontracts entered into in a year to which the excess profits tax provided in subchapter E of chapter 2 of the Internal Revenue Code of 1939 applied. *54 The excess profits tax was inapplicable to taxable years beginning after December 31, 1945, as provided in section 122(a) of the Revenue Act of 1945. The subcontracts in question were entered into pursuant to a prime contract designated No. W-33-038-AC-7 between Consolidated Vultee Aircraft Corporation and the United States Government, which prime contract was concededly not subject to the profit-limiting provisions of the Vison-Trammell Act, having been entered into on August 9, 1944. The same issue was before us in the recent case of Aluminum Company of America, 23 T.C. - (Oct. 29, 1954) wherein we decided that the profit-limiting provisions of the Vinson-Trammell Act do not apply to subcontracts unless they are entered into under prime contracts to which those provisions apply. It follows that this issue must be decided for petitioner. An alternative issue raised by petitioner need not be considered in view of our holding in his favor on the principal question. Decision will be entered under Rule 50.